NOT FOR PUBLICATION

RECEIVED
WILLIAM T. WALSH, CLERK

UNITED STATES DISTRICT COURT 2b  A 11: 12
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES
DISTRICT COURT

---

PASCAL J. DUBOIS,                                    :
                                                     :
        Plaintiff,                            :
                                                     :
        v.                                    :
                                                     :
MICHAEL T. ABODE (Warden at Middlesex   :   Civil Action No. 03-2364(SDW)
County Adult Correctional Center);      :
MIDDLESEX COUNTY ADULT                  :
CORRECTIONAL CENTER;                    :   **OPINION**
DR. WADHWA (Physician at Middlesex County  :
Adult Correctional Center); DAVID B. CRABRIEL : October 26, 2006
(Director of the Board of Chosen Freeholders); :
SANDRA VARGAS (Medical Administrator at :
Middlesex County Adult Correctional Center), :
                                                     :
        Defendants.                           :
                                                     :
                                                     :

---

APPEARANCES:

Pascal J. Dubois
M.C.A.C.C. 74163
P.O. Box 266
New Brunswick, New Jersey 08903

      Pro Se

Peter J. Barnes, III, Esq.
JORGENSON & BARNES
33 Wood Avenue South
Iselin, NJ 08330

      Attorneys for Defendant
      David B. Crabiel

Erin McLaughlin, Esq
DECKER & MAGAW
507 Westfield Avenue
Westfield, New Jersey 07090

> Attorneys for Defendants Dr. Rajesh
> Wadhwa and Sandra Vargas

Loris Dvorak, Esq.
LYNCH, KEEFE BARTELS
8093 Broad Street
Shrewsbury, NJ 07702

> Attorneys for Defendants
> Michael T. Abode and M.C.A.C.C.

**WIGENTON**, District Judge:

Pascal J. Dubois ("Plaintiff") filed this action against defendants Michael T. Abode,

David B. Crabriel, Dr. Wadhwa, Sandra Vargas and Middlesex County Adult Correctional

Center("MCACC") (collectively, the "Defendants") alleging that Defendants violated his Fourth,

Fifth, Eighth and Fourteenth Amendment rights pursuant to 42 USC §§ 1983 and 1985. In

particular, Plaintiff claims that Defendants acted with reckless disregard and deliberate

indifference in the following ways: 1) failing to protect him from an attack by one of his inmates

that was reasonably forseeable given a policy instituted by Defendant Abode; and 2) denying him

medical treatment and dental care after the assault. Plaintiff, as well as all five Defendants, have

moved for summary judgment. For the reasons set forth below Plaintiff's request for summary

judgment in his favor is denied. The motions for summary judgment in the favor of Defendants

Abode, Crabriel, Wadhwa, Vargas and MCACC are granted.

2

## I. FACTUAL BACKGROUND

Plaintiff Dubois was an inmate at MCACC from August 1999 until August 2003. In August 2003, Plaintiff was transferred to the Central Reception Assignment Facility ("CRAF") where he stayed for approximately 90 days. He was subsequently transferred to South Woods State Prison where he currently resides.

On April 10, 2003, Plaintiff authored a grievance, which was signed by several other inmates regarding a purported policy that Defendant Abode,[1] then warden of MCACC, instituted requiring inmates to go to the gym during their one hour recreational period. *See* Plaintiff's Brief in Support of Motion for Summary Judgment ("Pl. Br.") at Ex. D. The grievance stated that Plaintiff and the other signatories would "refuse to go to recreation, the gym" and explained that the warden's policy was inconsistent with section 10A:31-26.4 of the Manual of Standards of the New Jersey Adult County Correction Facilities, which mandated that "inmates shall be given the opportunity to participate in a minimum of one hour of physical exercise and recreation each day outside the living unit," but did not mandate that inmates participate in such activity. *See* Adult County Correctional Facilities Manual, 10A:31-26(4)( c); *see also* Pl. Br. at Ex. C. This grievance was also carbon copied to Defendant Crabiel, the director of County Freeholders.

While Plaintiff was in the library on April 16, 2003, Defendant Abode verbally announced this new policy to the inmates.[2] Prior to the implementation of this policy, inmates

---

[1]Defendant Abode was forced to retire from the position of warden in June 2003 for reasons that are not related to the current action.

[2]It is unclear based on Plaintiff's deposition and his brief what particular date Defendant Abode informed the inmates about the new gym policy, however, Plaintiff claims that Defendant Abode "was flip flopping all the time." Plaintiff's Deposition ("Pl. Dep.") at 31:13-18.

were allowed to stay in their cells and read books or watch television, rather than go to recreation in the gym. The next day when Plaintiff's unit was called to go to the gym, Plaintiff refused to go stating that he suffered from a back injury he sustained when he fell down in the courthouse and that it would be unsafe for him to be around the gym equipment or in the basketball area where there were no chairs to sit down and read a book or write a letter. Plaintiff further explained that he did not have any sneakers and only had shower shoes, which would not protect his feet from the heavy equipment and weights. Plaintiff was then allowed to go to the waiting unit in the medical department to read a book while his unit was in the gym.

Plaintiff purports that on April 18, 2003, Defendant Abode changed the gym policy again, making it optional for inmates to go to the gym. Plaintiff and several other inmates stayed in their housing unit that day to watch television and read. Defendant Abode, however, allegedly changed his policy again on April 19, 2003 and stated that if one inmate did not go to the gym every inmate would lose their one hour gym time.

On April 20, 2003, inmate Dwayne Peel (hereafter "DP"), entered Plaintiff's cell and began yelling at Plaintiff that he, DP, had come to enforce the warden's new policy and that Plaintiff better get ready for the gym. DP proceeded to punch Plaintiff in his face and then walked out of Plaintiff's cell locking the door behind him. Plaintiff reported that he may have lost consciousness briefly before he banged on his cell door for help from an officer. Plaintiff was rushed to Robert Wood Johnson Hospital in New Brunswick, New Jersey. Plaintiff lost several teeth and suffered a maxillary fracture, as well as severe lacerations to the inside and outside of his mouth, which needed stitches. Plaintiff's jaws were wired as a result.

On April 22, 2003, Plaintiff wrote a handwritten grievance to the warden, Defendant

4

Abode, claiming that Defendant Wadhwa, a licensed physician in the medical department at MCACC and Defendant Vargas,[3] a registered nurse and the medical administrator of MCACC, refused to make arrangements for his transport back to Robert Wood Johnson Hospital for a CAT scan. Plaintiff explained in his grievance letter that on the day of the incident, Dr. Sharmeen at Robert Wood Johnson Hospital said that she was going to give Plaintiff a CAT scan because he lost consciousness. Pl. Br., Exh. K at 2. Plaintiff stated that Dr. Sharmeen got so busy, however, that after putting in Plaintiff's stitches she left Plaintiff for a while and the sheriff took Plaintiff back to the prison without the CAT scan. Plaintiff had an unrelated civil action against Defendant Wadhwa pending at that time.

In a letter dated April 23, 2003, Defendant Abode explained to another inmate that he, Defendant Abode, was not requiring that inmates participate in recreation, but that all inmates were being located to the gym during their recreational period and could take a book or pencil and paper to write a letter. Plaintiff claimed that Defendant Abode's suggestion was absurd since there were no desks or places to sit in the gymnasium to read or write. Defendant Abode also responded to Plaintiff's letter concerning Defendant Wadhwa in a letter dated April 24, 2003. Defendant Abode stated that Wadhwa "is a competent and dedicated physician who in no way would be vindictive towards" Plaintiff. Pl. Br. at Ex. M. He further stated that Plaintiff could contact the librarian to file the appropriate paperwork to seek relief from the court.

On April 30, 2003, Plaintiff submitted a Medical Request Form informing the medical department that he had been scheduled to get his stitches removed seven days after the order was

---

[3]Plaintiff also named Defendants Wadhwa and Vargas in a suit pending in state court regarding the injury to Plaintiff's back. Plaintiff has also filed prior suits against Warden Abode and the MCACC.

written on April 21, 2003.[4]  Pl. Br. at Ex. N and O.  He also explained in his letter that he was

suffering from pain on the right side of his face, that he had started developing a speech problem

such as stuttering, which he did not have before the incident and that the inside of his jaw was

very raw.  *Id.*  He further stated that the in-house dentist said that Plaintiff's jaw had gotten

worse, but that the dentist could not do anything about it.

Plaintiff had his stitches removed by an in-house nurse.  Plaintiff claims that the nurse

used tweezers from her own handbag and that he sustained an infection on his chin after the

removal of the stitches.

Plaintiff was to see Dr. Patel from Robert Wood Johnson Hospital approximately 10 days

following the day he was injured, around May 4, 2003, regarding the wiring in his mouth.

Plaintiff notified Defendant Abode in a letter dated May 5, 2005 that he was in constant pain

because the inside of his mouth had become raw due to the wiring.  Plaintiff further complained

that the liquid diet provided by the MCACC, which consisted of salty soup, tea without sugar and

jello for breakfast, lunch and dinner constituted cruel and unusual punishment.  Plaintiff was sent

to see Dr. Patel about the wiring in his mouth on May 12, 2003.  Defendant Abode, however,

explained to Plaintiff that due to Plaintiff's "injury [he] can only receive a mechanical soft diet,

which is what [he had] been getting."  He assured Plaintiff that "no one here at this facility is

trying to inflict more pain on you."  Pl. Br. at Ex. R.

Plaintiff continued to make medical requests between May 6 to June 19, 2003 regarding

---

[4]Although Plaintiff claims that he was supposed to go to the outside hospital to get his
stitches removed, nothing in the doctor's order stated that the stitches had to be removed off-site.
The doctor's order did, however, specifically state that Plaintiff's stitches should be removed
within seven days as Plaintiff asserts.

his liquid diet and the stuttering problems he had been developing, sending carbon copies to

Defendant Crabiel. After Defendant Abode was forced to retire from the position of warden,

Plaintiff filed two medical requests dated June 29 and July 7, 2003 regarding his alleged speech

problems and a small cyst under his chin, which he claimed was caused by the nurses unsterilized

tweezers. An offsite oral dentist recommended that Plaintiff have prosthetic dental work

performed. MCACC typically does not pay for prosthetic dental work. Def. Wadhwa and

Vargas' Br. at 12. Plaintiff claims that he notified Defendant Vargas that his friend, Phyllis

Wilson, offered to pay for Plaintiff's dental care and sent Defendant Vargas a medical release

form. Defendant Vargas, however, never released Plaintiff's medical files to Dr. Kern, the

dentist who Plaintiff's friend was going to hire to complete the dental work needed by Plaintiff.

Plaintiff was transferred the following month, in August 2003, to CRAF.

Plaintiff filed this suit in May 2003 and amended his complaint on August 4, 2003 to

include Defendant Vargas. Jurisdiction is proper in this court pursuant to 28 USC §§ 1331 and

1343, and venue is proper pursuant to 28 USC § 1391.


## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). A "material" fact is one "that might affect the outcome of

the suit under the governing law[,]"and such a material fact will preclude the entry of summary

judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is

genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. *Id.* The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986).

Once the moving party meets the initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991). The nonmoving party "may not rest upon mere allegations or denials" of its pleading, Fed. R. Civ. P. 56(e), but must produce sufficient evidence to reasonably support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.

In this action, there are no genuine issues as to any material facts that would preclude summary judgment. Thus, the moving parties are entitled to a judgment as a matter of law.

## III. PLAINTIFF'S CLAIMS AGAINST INDIVIDUAL DEFENDANTS

### A. Section 1983 Claim

In order to establish a § 1983 claim, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." *Kneipp v. Tedder*, 95 F.3d 1199,

8

1204 (3d Cir. 1996). Analysis of a § 1983 claim begins by identifying the parameters of the right said to have been violated and then determining "whether the plaintiff has alleged a deprivation of a constitutional right at all." *A.M. ex rel J.M.K. v. Luzerne County Juvenile Detention Ctr.*, 372 F.3d 572, 579 (3d Cir. 2004). Further, Plaintiff is required to prove causation of the constitutional deprivation. *See Popow v. City of Margate*, 476 F. Supp. 1237, 1247 (D.N.J. 1979). Plaintiff claims that the Defendants failed to protect him from being assaulted by other inmates and denied his serious medical needs which, if proven, violate Plaintiff's Eighth and Fourteenth Amendment rights.

### 1. Eighth Amendment Violation

The Eighth Amendment imposes duties on prison officials to provide prisoners humane conditions of confinement, adequate food, clothing, shelter, medical care and they must "take reasonable measures to guarantee the safety of inmates. *Helling v. McKinney*, 509 U.S. 25, 31-32 (1993). This includes the protection of prisoners from violence at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825 (1994). To establish an Eighth Amendment violation for failure to provide for a prisoner's safety and general well being, the prisoner must show the following: 1) that he was incarcerated under conditions posing substantial risk of serious harm; and 2) that the official acted with deliberate indifference to the prisoner's health or safety. *See Grimsley v. Mackay*, 93 F.3d 676, 680-81 (10th Cir. 1996) (citing *Farmer*, 511 U.S. at 833). There is not a precise definition of the types of conditions of confinement that violate the first prong of the test by "posing a substantial risk of serious harm." *See Farmer*, 511 U.S. at 833. A prisoner must demonstrate that the deprivation or the actions of officials were sufficiently serious to show denial of minimal civilized necessities. *See Grimsley*, 93 F.3d at 681.

9

Pursuant to the Eighth Amendment, a prison official may be held liable for denying a prisoner humane conditions if he or she knew of "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. In the instant action, Plaintiff alleges that Defendant Abode was aware of Plaintiff's substantial risk of harm because Defendant Abode instituted a policy that Plaintiff says would likely put inmates in conflict with one another.

## 2. Fourteenth Amendment Violation

The Supreme Court has observed that prison administrators are obliged to take reasonable measures to guarantee the safety of inmates. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). Additionally, "[l]iability under § 1983 may be imposed on prison officials even when the assault has been committed by another prisoner, if there was intentional conduct, deliberate or reckless indifference to the prisoner's safety, or callous disregard on the part of prison officials." *Davidson v. O'Lone*, 752 F.2d 817, 828 (3d Cir. 1984).

## B. Supervisory Liability

For a plaintiff to prevail on a supervisory liability § 1983 claim, a plaintiff must show the following:

1. the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;

2. the supervisor's response to that knowledge was so inadequate that it shows "deliberate indifference to or tacit authorization of the alleged offensive practices"; and

3. that there was an "affirmative causal link" between the supervisor's inaction and

the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994).

## IV. DEFENDANTS' DEFENSES

In addition to stating that Defendants' conduct did not rise to the requisite levels to support finding Defendants liable for Plaintiff's injuries, Defendants Abode and Crabiel have asserted the defense of qualified immunity.

### A. Qualified Immunity

> A public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public arrest or false imprisonment.

N.J.S.A. 59:3-3. The qualified immunity defense requires that the public employee act in good faith. Thus, for example, willful misconduct implies a lack of good faith which would strip said public employee of the qualified immunity defense.

## V. DISCUSSION

### A. Defendant Abode

Plaintiff's request for summary judgment in his favor as to Defendant Abode is denied for the reasons set forth below. First, the policy articulated by the then warden, Defendant Abode did not require inmates to go to the gym and participate in physical activities regardless of their physical limitations. Plaintiff was not present when the recreation policy was announced to the inmates and Plaintiff appears to be unclear about the parameters of policy. *See* Pl. Dep. at 32:7-34:25. Inmates were required to go to the gym, to physically be at a particular location, but it does not appear that

11

it was mandatory for inmates to participate in physical activities or aggravate pre-existing medical conditions. Although the conditions of the gym and recreation program may not have been ideal, such conditions did not rise to the level of deliberate indifference as to Defendant Abode and the MCACC. Additionally, Plaintiff has not shown that the implementation and execution of the recreation policy was the proximate cause of his injuries.

Second, Plaintiff does not have personal knowledge that Defendant Abode in anyway influenced Inmate DP or instructed Inmate DP to harm Plaintiff. In fact, Plaintiff stated that he heard from fellow inmates that after the recreation policy was announced, Inmate DP asked Defendant Abode "What if Mr. Dubois doesn't go to the gym[?]" and Defendant Abode responded "You do what you have to do." Pl. Dep. at 42:13-18. To date no other inmate has made an official statement to this effect, but Plaintiff claims that there were several witnesses to this statement including an inmate named Oswaldo Gusman. Defendant Abode was not present at the time of the assault and there is no evidence to the effect that Defendant Abode instructed Inmate DP to harm Plaintiff. Even assuming that Defendant Abode did make the comment "You do what you have to do," such a comment cannot reasonably be construed to imput liability on Defendant Abode for DP's violent act towards Plaintiff.

After Plaintiff was assaulted the guards were responsive and he was taken to the medical unit, and then to the Robert Wood Johnson University Hospital. Plaintiff has not shown that Defendant Abode or the MCACC acted with a lack of good faith that would invalidate the qualified immunity defense. Plaintiff has not demonstrated that Defendant Abode acted inappropriately with an intent to do him harm or with deliberate indifference to Plaintiff's welfare. As such, summary judgment is hereby granted in Defendant Abode's favor. Plaintiff's complaint against Defendant Abode is

hereby dismissed with prejudice.

### B. Defendant Crabiel

Plaintiff's motion for summary judgment in his favor as to Defendant Crabiel is denied. Even upon viewing the facts in the light most favorable to Plaintiff, Plaintiff has not demonstrated that Defendant Crabiel acted with deliberate indifference as to Plaintiff's welfare. Lack of actual or constructive knowledge alone is not enough to alleviate a superior's responsibility in a case of deliberate indifference for a §1983 action. However, Plaintiff has not demonstrated that Defendant Crabiel was aware of how the recreation policy was implemented or that the policy, as described, put inmates at a substantial risk of harm.

Plaintiff has not shown that the recreation policy or Defendant Crabiel's action or lack of action was the cause of the injuries that he suffered. Plaintiff also has not demonstrated that Defendant Crabiel acted with a lack of good faith that would preclude the qualified immunity defense that he raised. As such, summary judgment is hereby granted in Defendant Crabiel's favor. Plaintiff's complaint against Defendant Crabiel is hereby dismissed with prejudice.

### C. Defendants Wadhwa and Vargas

Plaintiff has not demonstrated that Defendants Wadhwa and Vargas acted with deliberate indifference to cause Plaintiff harm, and as such Plaintiff's motion for summary judgment in his favor is denied. Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eight Amendment by prison doctors or guards by intentionally denying or delaying access to medical care or intentionally interfering with

13

treatment once prescribed. In this action, Plaintiff's claims do not rise to the level of deliberate indifference.

Upon assessing the facts in the light most favorable to the Plaintiff, the Court does not find that the Defendant's demonstrated unnecessary and wanton infliction of pain or acted in such a manner sufficiently egregious to rise to the level of a constitutional violation. *White v. Napoleon*, 897 F.2d 103 (3d Cir. 1990). Plaintiff has not demonstrated that Defendants Wadhwa and Vargas were deliberately indifferent to the serious medical needs of the Plaintiff. Plaintiff has not shown that the CAT scan he refers to was in fact ever actually ordered by hospital personnel, though Plaintiff claims that Dr. Sharmeen said that he needed one. Plaintiff also has not demonstrated that the CAT scan was in fact necessary or that not receiving such a CAT scan caused him harm. Additionally, Plaintiff has not demonstrated that the actions of Defendant Wadhwa and Vargas were the proximate cause of the infection or stuttering he has experienced.

It must be noted that the Supreme Court of the U.S. has held that,

> in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' ...[t]hus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle v. Gamble*, 429 U.S. 97 (1976). Medical malpractice may give rise to a tort claim in state court, but not necessarily to a constitutional claim. *Id.* The actions of Defendant Wadhwa and Vargas do not indicate the type of substantial departure from valid professional medical judgment necessary to be considered a constitutional violation of Plaintiff's rights.

14

In *White v. Napoleon*, the Court determined that there were two main components that separated the prisoners' complaint from ordinary allegations of medical malpractice: "(1) allegations that the doctor intended to inflict pain on prisoners without any medical justification and (2) the sheer number of specific instances in which the doctor allegedly insisted on continuing courses of treatment that the doctor knew were painful, ineffective or entailed substantial risk of serious harm to the prisoners." 897 F.2d at 109.

A doctor's disagreement with the professional judgment of another doctor does not, in and of itself, state a violation of the Eighth Amendment. Prisoner claims of "deliberate indifference to, and defiance of, explicit medical instructions, resulting in serious and obvious injuries" is sufficient to state a violation of constitutional rights. *Martinez v. Mancusi*, 443 F.2d 921 (2d Cir. 1970). The prisoner, however, must demonstrate that the medical professionals involved acted in such a manner as to rise to the level of deliberate indifference in order to prevail. In this instance, the Plaintiff has not shown that Defendants Wadhwa and Vargas acted with deliberate indifference to Plaintiff's serious medical needs. Summary judgment is hereby granted in Defendants Wadhwa and Vargas' favor. Plaintiff's complaint against Defendants Wadhwa and Vargas is hereby dismissed with prejudice.

s/Susan D. Wigenton, U.S.D.J.

Orig:  Clerk
cc:    Judge Arleo
      Parties